## The People v. Daniel Millspaugh.

An act of carnal intercourse with an unmarried woman, to which her assent was obtained by a promise of marriage made at the time, and to which without such promise she would not have yielded, constitutes the offense of seduction under the statute.

Accordingly where a woman was seduced in 1860, on a promise of marriage, and the intercourse was afterwards broken off, but was renewed again on the promise of marriage being renewed, and only in consequence of such promise; it was held that a prosecution might be commenced for the seduction at any time within one year from such last intercourse.

*Heard April 11th.   Decided May 12th.*

On exceptions from the Recorder's Court of Detroit. The case is fully stated in the opinion of Justice Christiancy.

*L. Bishop,* for defendant:

There can be no such thing as a criminal seduction in the last one of the two years during which the parties indulged in a free and unrestrained intercourse with each other.

To constitute the crime, the complainant must have been in the path of virtue when the alleged seduction in fact took place, which under the statute must not have been over one year before the prosecution was instituted, and she must have been led aside from that path by the defendant. But after the first intercourse the complainant was not in such a condition of virtue that she could be seduced by defendant. Another man might, perhaps, have seduced her as to himself and others. A woman may be incontinent as to one man, and not so, perhaps, as to another man; but she can not, in such a case, be seduced by her paramour. As to him there is no change in her course of life. As to him her life is uniformly vicious. In the case at bar it was such for nearly two years. That uniformity of vice in the complainant was not changed by the defendant. He may have been the original cause of it, but that question is not now in issue, and can not now be tried by reason of the lapse of time.

To constitute this offense "there must be actual elicit intercourse, and the female must be drawn aside from the path of virtue which she was honestly pursuing at the time the defendant approached her" *Whart. Cr. L.* 762, *note b.* To seduce a female "is universally understood to mean an enticement of her on her part to a surrender of her chastity:"—27 *Conn.* 319; 17 *Penn.* 608. A girl to be criminally seduced must be of good repute, and of virtuous life. She must be actually chaste and pure at the time of committing the offense. 8 *Barb.* 603. What path of virtue was this complainant in, and what chastity and purity had she, with regard to this defendant, for two years prior to this prosecution; and from what path of virtue, and from what chastity and purity did he seduce her in that time? If she had at any time reformed, and had become chaste, she might perhaps have been seduced over again; but nothing of the kind is claimed in this case. 8 *Barb.* 603.

*H. M. & W. E. Cheever,* for the people:

It is not necessary under our statutes, to constitute the crime of seduction, that the woman should have been from her infancy of pure and spotless character or reputation. The fallen, if reformed, is as much the subject of seduction, and her case as fully within the statute, as that of the purest girl living. 2 *Bish. Cr. L.* 1019; 8 *Barb.* 603. Our statute is materially different from that of New York and Pennsylvania, in which the words are, "seduce and debauch any woman of *previous chaste character*," while in our statute they are, "seduce and *debauch any unmarried woman.*" Yet in 8 *Barb.* 603, the Court say "*previous*" in the connection there used must mean *immediately pre-vious,* so that it would seem to be a question even under the statute of that State whether the character of the prosecutrix at any other time than *immediately* previous to the guilty conduct of defendant was in issue.

CHRISTIANCY J,:

The defendant was tried on an information filed October 3d, 1862, charging him with having, on the third day of March, 1862, seduced and debauched one Mary Taylor, an unmarried woman. The complaint on which the information was based was made July 11th, 1862. The statute *R. S. of* 1846, *Ch.* 158 § 7; *Comp. L. Ch.* 185 § 7—provides that no prosecution shall be commenced after one year from the time of committing the offense.

The evidence (which was unimpeached and uncontradicted) tended to show that the first sexual intercourse between the parties took place on the eighth day of July, 1860, when the complainant was not over sixteen years of age; that he had frequently solicited such intercourse before, but she had always refused, and finally yielded only in consequence of, and relying upon, his promise to marry her the next New Years, and his assurance that he would never think the less of her; that for the next three weeks this improper intercourse was repeated every two or three days, the defendant living at the house of her step father where she resided with her mother; that after this she did not see the defendant again for some months, when he again renewed his visits, about once in two weeks, till the month of November, 1861; that at each of these interviews the like intercourse was repeated, that he then left again, and she did not see him till Christmas, when (or within the week after) the same intercourse was renewed, and continued till April 1862; that she became pregnant from an intercourse which occurred on or about the third day of March, 1862. It appeared clearly from the evidence that at every act of intercouse the promise of marriage was renewed; that she placed full reliance upon it, and that it was on this account alone that she yielded to his desires. He had at first fixed the time for the marriage for the first of January, 1861,

which he afterwards put off till the first of January, 1862; after which, though no time was fixed, he still assured her of his intention to marry her. He had given her his portrait and various presents, and twice gave her money which he said he gave her that she might not have to work out. About the first of April, 1862, she informed the defendant of her condition, when he said he did not think it could be so, and at once ceased to visit her. That two or three weeks after this she again informed him of the same, when he inquired why she did not tell her mother and get rid of it. That after the fourth of July, 1862, she again told him her condition, and asked him what she should do, to which he replied he did not know what she asked him for.

There is no pretence that she ever had sexual intercourse with any other man, and, so far as is shown by the evidence, her character appears to have been pure with the exception of her intimacy with the defendant.

Upon this evidence the Court was asked to charge, that if the seduction charged was complete on the 8th day of July, 1860, more than two years previous to the prosecution, they should find the defendant not guilty. This was refused; but the Court in answer to this request charged, that "a seduction might have been complete on the 8th of July, 1860, but another seduction might have been committed since then."

The Court was further requested to charge, that "the mere act of illicit intercourse on March 3d, 1862, was not of itself sufficient to constitute the crime of seduction; but the complainant must have been led astray from the path of virtue in which she then was, by inducements offered by the defendant." Also that "the free intercourse between complainant and defendant for about two years should be considered by the jury as tending to show that there was no seduction at all." These requests were refused; but, in answer to them, the Court did charge

11 MICH.—S.

that, "even if the jury believe the complainant was seduced and debauched by the prisoner more than a year before the commencement of this prosecution, yet they cannot find a verdict against the prisoner" (meaning, as the context shows, for *that* seduction); "but if they believe from the whole evidence that the prisoner had sexual intercourse with said Mary Taylor, and that such intercourse was had on the third of March, 1862, or at any other time within the period of one year next preceding the commencement of the prosecution, under, and in consequence of, a renewed promise of marriage then, at the time, made, the offense was complete, and they may find the prisoner guilty."

We think this charge was fair and correct in every particular, and that it fairly met every material point raised by the requests to charge.

It is clear that any instance of seduction within the year would be sufficient to sustain the information, though we do not intend to say that the offense necessarily consists of a single act of intercourse, nor that the evidence should be thus confined. The whole course of conduct between the parties had been inquired into without objection, and no complaint is made or exception taken on that ground. The particular day alleged in the information was immaterial. Under this charge the jury could not have found the defendant guilty without having found, that, as to at least one of the acts of intercourse proved within the year, the complainant had been induced to yield her assent solely by the renewed promise of marriage made to her at the time, and that, without such promise, she would not have been induced to yield to his desires. The evidence (to which no objection was made) fully warranted this finding; and we think it entirely clear that, under our statute (which is much broader than the statutes of New York, Pennsylvania, Wisconsin and some other states), any one act of carnal intercourse to which the complainant's assent was obtained by a promise of marriage

made by the defendant at the time, and to which, without such promise, she would not have yielded, constitutes the offense provided for by the statute, as clearly as if it were the first act of such intercourse induced by the like promise. If the first act would constitute seduction, because her assent was obtained by such promise, we can discover no good reason why the second or any subsequent intercourse, to which her assent was obtained only by the same means, will not equally constitute the like offense.

As to the character for chastity or personal virtue, which it is insisted she must have had at the time in order to make her a competent subject for seduction — while we express no opinion as to a female who is shown to be unchaste with other men — we think all that is necessary in a case like the present, where there is no such evidence, is, that her personal character should be such as to satisfy the jury that she would not have yielded in the particular case without the express promise of marriage. To require any higher standard of virtue would be to nullify the statute, by making seduction impossible in any case, as well in reference to the first, as to any subsequent act of intercourse.

The case calls for no opinion, and we express none, upon the point, whether the result would have been different, had the jury found that an express promise of marriage had only been given at the outset, and that her assent was given in every subsequent instance only in consequence of, and reliance upon that promise.

There is no error in the proceedings of the Court below, and that Court should proceed to give judgment upon the verdict. Let it be so certified to that Court.

MANNING and CAMPBELL JJ. concurred.

MARTIN CH. J.:

I can not concur with my brethren in the view they take either of the law or the facts of this case. I shall not

recapitulate the evidence, but content myself with saying, that I can·discover no evidence of seduction and debauchery except such as was consummated some eighteen months or more before the filing of this information. For that period of time the prisoner and complaining witness seem to have had illicit intercourse as opportunity offered, and without objection, resistance, or even reluctance — so far as the case shows—upon her part; and, as I think from an examination of the ·testimony, without any thought or expectation of marriage by either for some six months before the time fixed in the information as that of their last intercourse. Were it not for the disastrous results of the interview on the third of March, I apprehend that no charge of seduction would ever have been made; nor would there have been any had the defendant settled as desired. It is a little remarkable, if the girl relied upon a promise of marriage, that after she found herself pregnant she should never have · demanded or even asked marriage; but was only solicitous to hide her shame, and only asked his advice to that end; and that her friends only subsequently interposed, to obtain a settlement; that is, as I understand it, to get pecuniary compensation for her disgrace, and indemnity for the expenses expected to follow.

I think the Judge below erred in his instructions to the jury, which tended to mislead them; and that the requests of the defendant should have been granted.