### S. B. PUTMAN v. THE STATE.

*No. 7243.    Decided April 29.*

1. **Seduction.** —"Seduction" means to "lead away" a female from the path of virtue; to entice or persuade her by means of a promise of marriage to surrender her chastity, and have carnal intercourse with the man making such promise.

2. **Same.**—To constitute the offense of seduction in this State it must appear that carnal intercourse with the female was accomplished by means of a promise to marry her made at the time of the illicit intercourse. Such promise and yielding her virtue in consequence thereof constitute the gist of the offense. If she at first resists, but finally assents in reliance upon such promise, the offense is committed. The female must be *seduced*—that is, corrupted, deceived, drawn aside from the path of virtue which she was pursuing; her affections must be gained, her mind and thoughts polluted; and she must be *debauched*—that is, carnally known. She must be both seduced and debauched by means of the promise of marriage.

3. **Same—Charge of the Court.**—In a prosecution for seduction the charge of the court should explain to the jury the term "seduction," as explained in the opinion in this case.   See the statement of the case for a charge held insufficient.

APPEAL from the District Court of Dallas.    Tried below before Hon. R. E. Burk.

This conviction is for the seduction of Amanda Ray, an unmarried female under the age of twenty-five years.

The punishment was assessed at confinement in the penitentiary for three years.

That portion of the charge of the court to which the opinion relates is as follows:    "If from the evidence before you in this case you are satisfied beyond a reasonable doubt that in Dallas County, Texas, at any time within three years next before September 14, 1889, the defendant, S. B. Putman, did seduce Amanda Ray, by a promise to marry her, and by means thereof did obtain and have carnal knowledge of her, the said Amanda Ray, and you further find that at the time said Amanda Ray was under the age of twenty-five years and was unmarried, you will find him guilty as charged, etc.

"To justify a conviction in this case you must be satisfied beyond a reasonable doubt that the carnal knowledge of Amanda Ray by defendant was first obtained by reason of a promise on his part to marry Amanda.

"If you are satisfied that such carnal knowledge was the result of mutual desires on the part of the defendant and Amanda Ray, and was had without any promise of marriage by defendant to Amanda, then the defendant, under the law, would not be guilty."

No bill of exception to the charge of the court appears in the record, and it does not appear that any additional charge was requested by the defendant.

The questions discussed in the opinion do not require a statement of the facts of the cause.

*W. F. Short*, for appellant.—1. The court erred in failing to explain to the jury the definition and character of the crime of seduction and the meaning of the word "seduce."    Willson's Crim. Stats., sec. 1421; The State v. Reevis, 97 Mo., 668;  Cole v. The State, 40 Texas, 147.

2.   The court erred in instructing the jury that to justify a conviction they must be satisfied that a carnal knowledge of Amanda Ray by defendant was first obtained by reason of a promise to marry her, without reference to seduction.    The idea of seduction is omitted from the charge, and the jury are in effect told that they must convict the defendant if he had carnal knowledge of Amanda Ray by a promise to marry.    They are told in effect that if she consented to grant a present favor to defendant in consideration of his future marriage with her,

his carnal knowledge of her would be seduction. This would be hire or salary, not seduction. The State v. Reeves, 10 Am. St. Rep., 349; The State v. Patterson, 88 Mo., 88.

3. The court erred in instructing the jury that if the carnal knowledge was the result of mutual desire, and was had without any promise of marriage, the defendant would not be guilty. If the carnal knowledge was the result of mutual desire there was no seduction, although there was a promise to marry. The People v. Clark, 33 Mich., 112; Bewers v. State, 29 Ohio St., 542.

*R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This prosecution and conviction in the court below was for the crime of seduction.

Our statutory provisions, in so far as they are involved in the questions submitted on the appeal here presented, are: "If any person by promise to marry shall seduce an unmarried female under the age of twenty-five years, and shall have carnal knowledge of such female, he shall be punished by imprisonment in the penitentiary not less than two nor more than five years, or by fine not exceeding $5000." Penal Code, art. 814.

"The term 'seduction' is used in the sense in which it is commonly understood." Penal Code, art. 815.

Mr. Webster defines "seduction" to be "the act of seducing or of enticing from the path of duty; specifically the act or crime of persuading a female to surrender her chastity. 2. That which seduces or is adapted or employed to seduce; means of leading estray," etc.

The word "seduction" is derived from two Latin words, *se,* which means "away," and *duce,* which means "to lead;" and together they mean "to lead away."

"Seduction," then, implies that the female is led away from the paths of rectitude and virtue, and induced to indulge in carnal intercourse by the means used. "Generally, in order to establish the charge of seduction it must be made to appear that the intercourse was accomplished by some artifice or deception; and it is held that something more than a mere appeal to the lust or passion of the woman must be shown before the law will inflict the penalty prescribed for that crime." The State v. Fitzgerald, 63 Iowa, 268.

Our statute expressly provides that the seduction must be accomplished by means of a "promise to marry." As was said in The People v. De Fore, 64 Michigan, 693 (8 Amer. St. Rep., 863): "Under this statute the offense is committed if the man has carnal intercourse to which the woman assented, if such assent was obtained by a promise of marriage made by the man at the time, and to which without such promise she would not have yielded. (The People v. Millspaugh, 11

Mich., 278.) The offense consists in enticing a woman from the path of virtue, and obtaining her consent to illicit intercourse by promises made at the time. The promise and yielding her virtue in consequence thereof is the gist of the offense. If she resists, but finally assents or yields thereto in reliance upon the promise made, the offense is committed." Boyce v. The People, 55 N. Y., 644.

Mr. Bishop, in his work upon Statutory Crimes, p. 638, second edition, says: "Though the parties are already under marriage engagement, if the woman yields, not by reason of the man's promise of marriage, but simply for the gratification of a criminal desire, he does not commit the offense, yet the subsistence of the engagement does not render his act less a crime if she submits from reliance thereon." In the words of Bleckley, J. (58 Ga., 328): "To make love to a woman, woo her, make honorable proposals of marriage, have them accepted, and afterward undo her under a solemn repetition of the engagement vow, is to employ persuasion as well as promise of marriage."

Under a statute quite similar to ours, where the language of the statute was, "If any person shall, under promise of marriage, seduce and debauch any unmarried female," etc., the Supreme Court of Missouri, in an able opinion by Sherwood, J., says: "There are two steps necessary to be taken in order to consummate the crime under discussion. First, the female must be seduced—that is, corrupted, deceived, drawn aside from the path of virtue which she was pursuing; her affections must be gained, her mind and thoughts polluted; and second, in order to complete the offense, she must be debauched—that is, she must be carnally known before the guilty agent becomes answerable to human laws." Thus it will be seen that a female may be seduced without being debauched, or debauched without being seduced. A similar view of the proper construction of a statute substantially identical with our own was taken in Pennsylvania in Commonwealth v. McCarty, 2 Clark, 135, and cited with approval in The State v. Patterson, 88 Missouri, 88; The State v. Reeves, 97 Missouri, 668.

In the State v. Patterson, 88 Missouri, *supra*, we find a definition of the statutory word "seduce," which commends itself to our minds as eminently correct. It is as follows: "The word 'seduce,' though a general term and having a variety of meanings according to the subject to which it is applied, has, when it is used with reference to the conduct of a man toward a female, a precise and determinate signification, and is universally understood to mean an enticement of her on his part to surrender her chastity by means of some art, influence, promise, or deception calculated to accomplish that object, and to include the yielding of her person to him as much as if it was expressly stated." Citing The State v. Bierce, 22 Conn., 319; Dinkey v. The Commonwealth, 17 Pa. St., 319.

As is pertinently said in The State v. Reeves, *supra:* "No one can with any degree of plausibility contend that a virtuous female could be seduced without any of those arts, wiles, and blandishments so necessary to win the hearts of the weaker sex. To say that such a one was seduced by simply a blunt offer of wedlock *in futuro* in exchange for sexual favors *in praesenti*, is an announcement that smacks too much of bargain and barter and not enough of betrayal. 'Tis hire or salary, not seduction."

In his charge to the jury in the case in hand the learned trial judge did not sufficiently submit to the jury the law of seduction as it is well settled and established in accordance with the principles above announced. There was no explanation whatever of the legal term "seduction."

In Cole v. The State, 40 Texas, 147, Moore, J., says: "The charge of the court would have been more satisfactory if the inducement to commit the unlawful act with the defendant had been more fully explained. The jury might not have understood fully the nature of the accusation and the facts that must be proved to warrant a conviction. The term "seduction," when used in the sense in which it is commonly understood, does not convey the full meaning of the offense which is intended to be punished by the code."

That case was reversed for defects in the charge. The charge of the court in this case is objectionable for errors of omission to the same extent.

Because the charge of the court failed to submit sufficiently the law applicable to the case, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.